IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

TITUS V. SCHENSE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SHAWN TITUS, APPELLANT,

V.

DONALD L. SCHENSE, APPELLEE.

Filed November 7, 2023.    No. A-23-054.

Appeal from the District Court for Douglas County: KATIE L. BENSON, Judge. Affirmed.

Shawn Titus, pro se.

Ronald F. Krause and Michael R. Faz, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Shawn Titus appeals from the Douglas County District Court's order granting summary judgment in his legal malpractice action in favor of Donald L. Schense. For the reasons stated herein, we affirm.

## II. STATEMENT OF FACTS

### 1. BACKGROUND

In 2018, pursuant to a plea agreement, Titus pled no contest to attempted first degree sexual assault. The plea was an "*Alford* plea." The district court sentenced Titus to 15 to 20 years' imprisonment. Titus, represented by different appellate counsel, filed a direct appeal assigning as error that his trial counsel was ineffective and that the sentence imposed was excessive. Specifically, Titus alleged that trial counsel was ineffective by (a) failing to obtain or consult with

- 1 -

an expert witness; (b) failing to develop and martial a proper defense strategy; (c) failing to request recusal of the trial judge and prosecutor because of the pendency of Titus' federal court lawsuit in which both were named as defendants; (d) failing to place the entire plea agreement on the record; (e) advising Titus to accept the plea offered; and (f) failing to advise Titus that acceptance of the plea negated his ability to appeal the denial of his plea in abatement. *State v. Titus*, No. A-18-1096, 2019 WL 3562180 (Neb. App. Aug. 6, 2019) (selected for posting to court website). This court determined that the record on appeal was insufficient to review each of Titus' claims of ineffective assistance of trial counsel. *Id*. We further determined that the sentence imposed was not excessive. *Id*.

In September 2019, Titus filed a pro se motion for postconviction relief. In that motion, Titus presented 13 claims for relief. Three of the claims matched claims of ineffective assistance of trial counsel preserved in his direct appeal (failing to obtain or consult with an expert witness, failing to request recusal of the trial judge and prosecutor because of the pendency of Titus' federal court lawsuit, and failing to advise Titus that acceptance of the plea negated his ability to appeal the denial of his plea in abatement). Nine of the claims were new allegations of ineffective assistance of appellate counsel. Titus' final claim was an allegation that the "[g]overnment breached the plea agreement" because the "State was supposed to stand silent at sentencing, but argued at length for a sentence of imprisonment." Thereafter, Titus requested leave to file an amended motion, but did not identify which of his claims he would amend or what changes the amendments would include. This request was denied. Titus also filed a motion for appointment of counsel, which was granted. The court appointed Schense to represent Titus during the postconviction proceedings.

The court granted an evidentiary hearing on Titus' allegation that there was an agreement by the State to stand silent at sentencing and on the three claims of ineffective assistance of trial counsel which had been preserved on direct appeal. Following the hearing, the district court denied Titus' motion for postconviction relief. Titus, acting pro se, appealed this decision to this court alleging that the district court erred by (1) committing various due process violations; (2) finding that the State had not agreed to stand silent at sentencing and that trial counsel did not provide ineffective assistance; and (3) refusing to grant leave to amend his original postconviction motion. Titus also assigned that his postconviction counsel was ineffective. *State v. Titus*, No. A-21-765, 2022 WL 2438283 (Neb. App. July 5, 2022) (petition for further review denied Sept. 22, 2022). This court concluded that the district court did not abuse its discretion in denying Titus' request to file an amended motion for postconviction relief, that it did not err in overruling Titus' motion for postconviction relief, and that Titus' arguments related to the effectiveness of his postconviction counsel failed. *Id*.

## 2. CURRENT PROCEEDINGS

In August 2022, Titus filed a civil complaint against Schense alleging legal malpractice related to Schense's representation of Titus during the postconviction proceedings. The complaint was subsequently amended to allege negligence due to Schense's "failure to raise meritorious claims, including, but not limited to, appellate counsel's failure to raise a challenge to the sufficiency of [the] evidence for the factual basis . . ." Titus also alleged that he was "actually

- 2 -

innocent." The complaint requested damages of no less than $500,000; punitive damages of $250,000; lost wages of $35,000; and attorney fees and costs.

Titus later filed a motion for appointment of counsel to assist him in the proceedings and a motion to stay the proceedings "until his legal disability is removed," his disability being his incarceration. Specifically, he claimed that because of his incarceration, he earned about $45 per month, the cost of postage and envelopes had increased, he lacked email or internet access, his access to legal research and typewriters was limited, he could not conduct discovery or depositions, he lacked the funds for an expert witness, and that these combined limitations warranted a stay of the proceedings. The court denied both the motion for appointment of counsel and the motion for a stay of the proceedings.

In November 2022, Schense filed a motion for summary judgment. Titus responded by filing a motion for an extension of time to "to serve and submit his Annotated Statement of Disputed Facts, Exhibit Index in Opposition to [Schense's] Motion for Summary Judgment, and brief in opposition . . ." Shortly thereafter, Titus filed a competing motion for summary judgment but did not file a motion for hearing thereon.

A hearing on Schense's motion for summary judgment was held in December 2022. During this hearing, the court received into evidence Schense's affidavit, which averred that based on his education, training, experience, and his professional opinion, to a reasonable degree of professional certainty, he did not violate any duty owed to Titus, he fully complied with all duties owed under the standard of care of a licensed practicing attorney in the State of Nebraska while representing Titus, and no action or inaction on his part caused or contributed to cause any of the damages alleged by Titus.

The district court granted summary judgment in favor of Schense and dismissed Titus' amended complaint. The court indicated that Schense's affidavit set forth a prima facie case of lack of negligence, thus shifting the burden to Titus to produce evidence showing the existence of a material issue of fact preventing judgment as a matter of law. The court found that Titus failed to present any evidence from an expert that Schense had committed legal malpractice. Further, although Titus had not sought a hearing date on his motion for summary judgment, in order to dispose of the case as a whole, the court denied Titus' motion for summary judgment. Titus has timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Titus's assignments of error, consolidated and restated, are that the district court (1) erred in granting summary judgment in favor of Schense because the admission of Schense's affidavit was unfairly prejudicial; (2) erred in finding that expert testimony was necessary to refute Schense's allegations contained within his affidavit; (3) committed plain error in denying his request for extension of time; and (4) erred in failing to appoint counsel as an expert witness.

## IV. STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Buttercase v. Davis*, 313 Neb. 1, 982 N.W.2d 240 (2022), *modified on denial of rehearing* 313 Neb. 587, 985 N.W.2d 588 (2023). An

appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Id*.

## V. ANALYSIS

Before reaching the merits of Titus' assigned errors, we first briefly summarize the standard for a convicted criminal's legal malpractice claim and the summary judgment procedure invoked by Schense in response to Titus' claim. In response to Titus' claim, Schense filed a motion for summary judgment claiming that, pursuant to the elements of Titus' claim, Schense was entitled to summary judgment as a matter of law.

In *Buttercase v. Davis*, the Nebraska Supreme Court stated:

> Actual innocence is one of four factors we have recognized in considering legal malpractice claims. In *Rodriguez v. Nielsen*, [259 Neb. 264, 609 N.W.2d 368 (2000),] we held that a convicted criminal who files a legal malpractice claim must plead and prove the following: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, (3) that such negligence resulted in and was the proximate cause of loss (damages) to the client, and (4) innocence of the underlying crime with which the plaintiff was charged. The *Rodriguez* court noted that the actual innocence factor serves the dual goals of ensuring that convicted criminals are not given "an opportunity to profit either directly or indirectly" from their criminal conduct and "encouraging the representation of criminal defendants, especially indigents."

313 Neb. at 11, 982 N.W.2d at 251.

In *Clark v. Scheels All Sports*, 314 Neb. 49, 59-60, 989 N.W.2d 39, 47-48 (2023), the Nebraska Supreme Court stated:

> The statutory procedure governing summary judgment motions is set out in § 25-1332. Section 25-1332 identifies the type of evidence that may be received on a motion for summary judgment and the legal standard to be applied when deciding such motions. Regarding the former, the statute provides, "The evidence that may be received on a motion for summary judgment includes depositions, answers to interrogatories, admissions, stipulations, and affidavits." Regarding the latter, the statute provides that summary judgment "shall be rendered forthwith if the pleadings and the evidence admitted at the hearing show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> Consistent with these statutory provisions, our cases have long held that summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Likewise, our cases have long held that the party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that

prevents judgment as a matter of law. But in the absence of a prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial.

## 1. ADMISSION OF SCHENSE'S AFFIDAVIT

Titus first contends that it was an error for the district court to admit Schense's affidavit because it was self-serving, conclusory, and did not cite to specific facts.

In *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999), the Nebraska Supreme Court addressed a strikingly similar contention which we cite at length due to the dispositive nature of the court's analysis and conclusions governing the subject matter. In analyzing the sufficiency of a conclusory opinion in an affidavit offered by an attorney defendant in a summary judgment proceeding, the Nebraska Supreme Court held:

A movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence were uncontroverted at trial. *O'Connor v. Kaufman*, 250 Neb. 419, 550 N.W.2d 902 (1996). [The attorney defendant's] motion for summary judgment was premised on his affidavit, wherein [the attorney defendant] stated that his representation of [the plaintiff] met the applicable standard of conduct. Such evidence, if admitted at trial, would be uncontroverted only if [the plaintiff] failed to produce any evidence, whether by expert or otherwise, indicating that [the attorney defendant] neglected a reasonable duty, i.e., breached the standard of conduct. [The plaintiff's] failure to present such evidence would entitle [the attorney defendant] to judgment as a matter of law, since [the plaintiff] would have failed to meet her burden of proof. See, e.g., *Baker v. Fabian, Thielen & Thielen*, 254 Neb. 697, 578 N.W.2d 446 (1998). See, also, *Hall v. Stephenson*, 919 S.W.2d 454 (Tex. App. 1996) (stating that defendant is entitled to summary judgment if summary judgment evidence establishes, as matter of law, that at least one element of plaintiff's cause of action cannot be established).

We note that [the attorney defendant's] affidavit did not contain a specific recitation of the underlying facts upon which he based his expert opinion. . . .

However, this court has long held that "an affidavit of a defendant physician in a malpractice case, which affidavit states that the defendant did not breach the appropriate standard of conduct, presents a prima facie case of lack of negligence for the purposes of summary judgment." . . . Thus, this court's precedent would indicate that [the attorney defendant's] affidavit was sufficient to establish a prima facie case, despite its lack of underlying facts.

An analysis of the underlying law demonstrates the basis for this court's holding in [*Hanzlik v. Paustian*, 216 Neb. 575, 344 N.W.2d 649 (1984)]. Neb. Rev. Stat. § 25-1334 (Reissue 1995), which prescribes the form of affidavits offered in support of summary judgment, states, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." There is no question that [the attorney defendant's] affidavit was made on personal knowledge (he

handled [the plaintiff's] case) and that he was competent to testify to the matters stated therein (he is an expert as to legal matters). The only question is whether [the attorney defendant's] opinion in his affidavit would be admissible in evidence had the case gone to trial.

Because [the attorney defendant's] affidavit presented competent evidence sufficient to support a finding that his conduct was in compliance with the standard of conduct, he would be entitled to judgment as a matter of law if that evidence were uncontroverted. Therefore, we conclude that [the attorney defendant's] affidavit established a prima facie case for purposes of summary judgment.

*Boyle v. Welsh*, 256 Neb. at 125, 589 N.W.2d at 124-25.

We reach a similar conclusion here. Because Schense's affidavit presented competent evidence sufficient to support a finding that his conduct complied with the applicable standard of conduct, he would be entitled to judgment as a matter of law if the evidence was uncontroverted. We find that, despite the self-serving and conclusory nature of Schense's affidavit, it was uncontroverted and established a prima facie case for purposes of summary judgment. This assignment of error fails.

## 2. NECESSITY OF EXPERT TESTIMONY

Titus next contends that expert testimony was not necessary to rebut Schense's affidavit because (a) his claim presented an issue of law, not fact, and (b) the common knowledge exception applies. We will address those arguments independently.

### (a) Issue of Law or Fact

Titus first argues that, in connection with his legal malpractice claim, he asserted that Schense failed to raise meritorious claims for relief during his postconviction proceedings, including his innocence; that his plea was legally and factually invalid for a variety of reasons; and that the factual basis was insufficient to establish the elements of a crime. He argues that these allegations present questions of law for the court thereby negating his obligation to present expert testimony to rebut Schense's opinion that he conformed to the standard of care.

The general rule regarding an attorney's duty to his or her client is that the attorney, by accepting employment to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. *Wolski v. Wandel*, 275 Neb. 266, 746 N.W.2d 143 (2008). Although this general standard is established by law, the question of what an attorney's specific conduct should be in a particular case and whether an attorney's conduct fell below that specific standard is a question of fact. *Id.* Expert testimony is generally required to establish an attorney's standard of conduct in a particular circumstance and that the attorney's conduct was not in conformity therewith. *Id.* This is so because a jury cannot rationally apply a general statement of the standard of care unless it is made aware of what a reasonable attorney would have done in similar circumstances. *Id.* An exception to this general rule is that where the evidence and circumstances are such that recognition of the alleged negligence may be presumed to be within the comprehension of laypersons, no expert testimony is required. *Id.*

The Nebraska Supreme Court stated in *Kozal v. Snyder*, 312 Neb. 208, 214, 978 N.W.2d 174, 180 (2022):

> In *Guinn v. Murray*, [286 Neb. 584, 837 N.W.2d 805 (2013),] this court previously clarified what issues in a legal malpractice action are questions of law for the court and what issues are questions of fact for the fact finder. To the extent there is an issue as to what the law was and whether the attorney correctly advised on such law is a question of law for the court. If the court decides that an attorney's conduct or advice did not comport with the substance of the law at the time it was given, then whether the attorney's specific conduct in that particular case fell below what the attorney's specific conduct should have been is a question of fact. Said differently, it is a question of fact whether the attorney's conduct, under the particular circumstances of the case, was such that the attorney exercised the same skill, diligence, and knowledge as that commonly possessed by attorneys acting in similar circumstances.

Here, this malpractice claim is grounded in Schense's conduct. That is, whether Schense's conduct in representing Titus in his postconviction proceedings comported with the skill, diligence, and knowledge as commonly possessed by attorneys acting in similar circumstances. Thus, as to Titus' specific allegations that Schense departed from that standard of care by failing to raise certain defenses, the claim presents a question of fact for the fact finder and not a question of law for the court. Having failed to rebut Schense's affidavit in which he opined that he did not depart from the standard of care, Titus cannot claim error under a theory that there was no factual claim to be resolved. This assignment of error fails.

### (b) Common Knowledge Exception

Titus next argues that he was not obligated to rebut Schense's opinion because the factual issues raised in his pleading fall under the common knowledge exception to expert testimony.

As a general matter, in a malpractice action, expert testimony is required to identify the applicable standard of care. *Thone v. Regional West Med. Ctr.*, 275 Neb. 238, 745 N.W.2d 898 (2008). An attorney malpractice action provides no exception to that general rule as expert testimony is generally required to show whether an attorney's performance conformed to the standard of conduct. *Rice v. Poppe*, 293 Neb. 467, 881 N.W.2d 162 (2016). That said, the Nebraska Supreme Court has recognized a narrow exception to that general rule known as the common knowledge exception. As the Nebraska Supreme Court noted in *Thone*:

> We have long recognized that a party can make a prima facie case of professional negligence even without expert testimony in cases where "the evidence and the circumstances are such that the recognition of the alleged negligence may be presumed to be within the comprehension of laymen." [*Halligan v. Cotton*, 193 Neb. 331, 336, 227 N.W.2d 10, 13 (1975).] This common-knowledge exception is limited to cases of extreme and obvious misconduct. Examples include failure to remove a surgical instrument from a patient's body following a procedure or amputating an incorrect limb.

275 Neb. at 243-44, 745 N.W.2d at 904.

The question here is whether Titus' allegations of Schense's conduct in connection with his representation of Titus during his postconviction proceedings falls within that narrow area of extreme and obvious misconduct in representation that obviated the need for expert testimony to rebut Schense's claim that he comported with the standard of care. We hold that it does not.

A layperson could not be expected to know, without the assistance of expert testimony, whether counsel was negligent during postconviction proceedings for failing to raise additional claims governing the sufficiency of the factual basis that supported Titus' plea or his claims of actual innocence in connection with a conviction to which he pled. As it relates to the complexity of these matters, it was incumbent upon Titus to obtain expert testimony to support his theory that Schense departed from the standard of care in order defeat Schense's motion for summary judgment. See *Wolski v. Wandel*, 275 Neb. 266, 746 N.W.2d 143 (2008) (layperson could not be expected to know, without assistance of expert testimony, whether attorney was negligent in counseling client to settle litigation). Because Titus presented no expert testimony to contradict Schense's affidavit, there was no genuine issue of material fact as to the allegations of professional negligence. This assignment of error fails.

### 3. DENIAL OF STAY OR EXTENSION OF TIME

Titus next assigns that the district court abused its discretion or committed plain error when it denied his stay of the proceedings and/or denied his request for an extension of time.

Courts inherently possess the power to stay proceedings when required by the interests of justice. *Buttercase v. Davis*, 313 Neb. 1, 982 N.W.2d 240 (2022), *modified on denial of rehearing* 313 Neb. 587, 985 N.W.2d 588 (2023). In determining whether to exercise this power, courts balance the competing needs of the parties, taking into account, among other things, the court's interests, the probability the proceeding will work a constitutional violation on the movant, the presence or absence of hardship or inequity, and the burden of proof. *Id*. Stays are often used to regulate the court's own proceedings or to accommodate the needs of parallel proceedings. *Id.* The burden of establishing that a proceeding should be stayed rests on the party seeking the stay. *Id.*

Here, Titus filed a motion to stay the proceedings as a result of his legal "disability," which included his lack of sufficient funds to continue pursuing his complaint and the lack of resources available to him while incarcerated to meaningfully participate in the action. In denying his motion to stay the proceedings, the district court noted that Titus

> chose to file this action despite being incarcerated and knowing his parole eligibility date is not until August 17, 2025, and projected release date not until October 31, 2027. (Nebraska Department of Correctional Services Incarcerations Records website). The Court further notes that [Titus'] motion fails to cite any legal authority establishing he is entitled to such a stay of proceedings.

In *Buttercase*, the Nebraska Supreme Court, in analyzing whether the lower court abused its discretion in failing to order a continuance, noted that a "'stay of a civil action, especially a stay of indefinite duration, is an extraordinary remedy.'" 313 Neb. at 20, 982 N.W.2d at 257, quoting *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993). Although we recognize the practical difficulties presented by Titus pursuing this civil action against his former attorney while incarcerated, when applying the factors that justify a stay in civil

proceedings, we cannot say that the district court's refusal to grant an indefinite stay constituted an abuse of discretion. This assignment of error fails.

### 4. Failure to Appoint Counsel as Expert

Titus' final assignment of error is that the district court abused its discretion in denying his request to appoint counsel as an expert witness.

In civil cases, there is no constitutional or statutory right to appointed counsel. *Payne v. Nebraska Dept. of Corr. Servs.*, 24 Neb. App. 1, 879 N.W.2d 705 (2016). Nebraska law allows for appointment of counsel only when a person's physical liberty may be in jeopardy. *Id.*

Here, Titus filed a motion for appointment of counsel alleging that the statute of limitations would run on his claim before he was released from prison and that he could not afford the costs of copying and mailing motions, conducting meaningful discovery, or hiring an attorney or an expert. Additionally, Titus asserted that due to his limited phone access as a prisoner, he was unable to consult with attorneys or experts and he could not complete research or obtain files for discovery purposes. The district court denied Titus' motion for appointment of counsel stating "[a]fter review, the Court finds [Titus] has failed to set forth any law requiring such appointment." We agree. Because there is no statutory or constitutional right to an attorney in civil matters and Titus failed to present any authority which requires the court to appoint an attorney to serve as his expert witness in connection with a legal malpractice claim, this assignment of error fails.

### VI. CONCLUSION

For the reasons stated herein, we affirm the district court's order granting summary judgment in favor of Schense.

AFFIRMED.