Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/31/2019 09:06 AM CST

- 896 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
McEWEN v. NEBRASKA STATE COLLEGE SYS.
Cite as 27 Neb. App. 896

Dr. Robert McEwen, appellant, v. Nebraska
State College System, appellee.

___ N.W.2d ___

Filed December 17, 2019.    No. A-17-638.

1. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
2. **Contracts.** The interpretation of a contract and whether the contract is ambiguous are questions of law.
3. ____. In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.
4. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.
5. **Contracts.** When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.
6. ____. The fact that the parties have suggested opposing meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.
7. ____. A contract must receive a reasonable construction, and a court must construe it as a whole and, if possible, give effect to every part of the contract.
8. ____. Whatever the construction of a particular clause of a contract, standing alone, may be, it must be read in connection with other clauses.
9. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Dawes County: Derek C. Weimer, Judge. Affirmed.

Howard P. Olsen, Jr., and Adam A. Hoesing, of Simmons Olsen Law Firm, P.C., for appellant.

George E. Martin III and Leigh Campbell Joyce, of Baird Holm, L.L.P., for appellee.

Riedmann, Bishop, and Arterburn, Judges.

Riedmann, Judge.

## INTRODUCTION

Dr. Robert McEwen appeals the decision of the district court for Dawes County which overruled his petition in error challenging the termination of his employment. On appeal, he alleges that the court's decision was erroneous because the Nebraska State College System (NSCS) failed to comply with a contractually required provision prior to terminating his employment. Finding no merit to this argument, we affirm.

## BACKGROUND

McEwen was a tenured professor at Chadron State College (CSC). He and NSCS were members of the State College Education Association, which was a party to a collective bargaining agreement (the CBA) effective from July 1, 2015, through June 30, 2017. Under the CBA, faculty members, tenured and nontenured, may be dismissed for just cause. Section 17.3 of the CBA provided, "Prior to giving a faculty member notice of a recommendation for dismissal, the Dean shall meet privately and discuss the recommendation with the faculty member. The matter may be reconciled by mutual consent."

In the fall of 2015, one of McEwen's students filed a formal complaint against McEwen with CSC's administration alleging discrimination. The associate vice president of human resources at CSC, Anne DeMersseman, began an investigation into the complaint. In October, Dr. Charles Snare, the vice president for academic affairs at CSC, and Dr. James Margetts, a dean at CSC who oversaw McEwen, authored a

- 898 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
McEWEN v. NEBRASKA STATE COLLEGE SYS.
Cite as 27 Neb. App. 896

letter to McEwen outlining the concerns raised in the complaint and subsequent investigation. A meeting concerning the complaint was held on October 30, and McEwen, Snare, Margetts, and DeMersseman attended, as well as an auditor for McEwen due to his hearing difficulties. Snare, Margetts, and DeMersseman discussed the matter after the meeting and decided to recommend dismissal of McEwen.

A second meeting was held on November 10, 2015. McEwen, Snare, and Margetts attended the meeting, which was held in Margetts' office. Margetts requested Snare's presence as a witness, but Snare did not speak at all during the meeting. Margetts informed McEwen that he was recommending McEwen's dismissal and offered him the opportunity to resign rather than be subject to dismissal. Upon the advice of his union representative, McEwen declined to comment, and at the end of the meeting, which lasted approximately 5 minutes, Margetts provided McEwen a copy of the letter recommending his dismissal.

Subsequently, the president of CSC sent written notice of the recommendation to McEwen. Pursuant to procedure set forth by the CBA, McEwen requested a hearing before an advisory committee. Prior to the hearing, McEwen filed a motion for reinstatement and dismissal of recommendation of dismissal. The motion alleged, in part, that CSC had not complied with the requirements of section 17.3 of the CBA. The advisory committee denied the motion. The audio-recorded hearing took place in February 2016; evidence was presented, witnesses testified, and the recording was transcribed. At the conclusion of the hearing, McEwen renewed his motion. The motion was again denied. The advisory committee unanimously found that just cause for McEwen's dismissal existed and recommended the termination of his employment.

The president of CSC sent to McEwen a written letter dated March 16, 2016, in which he affirmed the findings and recommendations of the advisory committee and discharged McEwen's employment. McEwen then made a

- 899 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
McEWEN v. NEBRASKA STATE COLLEGE SYS.
Cite as 27 Neb. App. 896

written request to NSCS' chancellor requesting a hearing before NSCS' board of trustees. In a response letter, the chancellor denied McEwen's request for a hearing, thereby finalizing the discharge.

On May 17, 2016, McEwen filed a petition in error in the district court. He alleged that he had been wrongfully terminated from his position as a tenured professor at CSC. As relevant to this appeal, he asserted that NSCS failed to follow the procedure set forth in section 17.3 of the CBA. Specifically, he claimed that section 17.3 mandated a "private" meeting between McEwen and Margetts and that because Snare was also present at the November 10, 2015, meeting, it did not satisfy section 17.3's requirements.

The district court disagreed, finding that the November 10, 2015, meeting satisfied the requirements of section 17.3. The court found that the term "private" required some restriction to participation in and observance of the occurrence, and it found that that standard was satisfied when the November 10 meeting took place in a private office, behind "'closed doors,'" and with no verbatim record kept. The court erroneously found that an auditor for McEwen was present at the meeting in addition to McEwen, Snare, and Margetts, but noted that neither the auditor nor Snare actively participated in the meeting. The court therefore overruled McEwen's petition in error.

McEwen filed a motion for new trial or, in the alternative, an order to vacate the judgment. In its order denying the motion, the district court recognized that it had made a factual error in its prior order in that an auditor was not present at the November 10, 2015, meeting. However, the court concluded that this factual error did not mandate a vacation of its previous order; thus, it denied McEwen's motion to vacate. The motion for new trial was also denied.

McEwen then filed a notice of appeal. This court summarily dismissed the appeal for lack of jurisdiction, finding that McEwen's motion for new trial did not toll the time to file

- 900 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
McEWEN v. NEBRASKA STATE COLLEGE SYS.
Cite as 27 Neb. App. 896

a notice of appeal and that McEwen's notice of appeal was not timely filed. On petition for further review, the Nebraska Supreme Court, overruling prior precedent, determined that Neb. Rev. Stat. § 25-1329 (Reissue 2016) applies to a judgment of a district court acting as an intermediate appellate court. See *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019). Consequently, it concluded that McEwen's alternative motion to vacate qualified as a motion to alter or amend a judgment; therefore, his notice of appeal was timely. *Id*. Accordingly, the Supreme Court reversed the summary dismissal of the appeal and remanded the cause to this court for further proceedings. *Id.* We now proceed to address the merits of the appeal.

## ASSIGNMENT OF ERROR
McEwen assigns, consolidated and restated, that the district court erred in overruling his petition in error because NSCS failed to meet the requirements of section 17.3 of the CBA.

## STANDARD OF REVIEW
[1,2] We independently review questions of law decided by a lower court. *Timberlake v. Douglas County*, 291 Neb. 387, 865 N.W.2d 788 (2015). The interpretation of a contract and whether the contract is ambiguous are questions of law. *Id*.

## ANALYSIS
McEwen alleges that NSCS failed to follow section 17.3 of the CBA, which requires that the Dean "meet privately" with him to discuss the recommendation for dismissal. McEwen argues that the term "privately" mandates a "one-on-one" meeting between him and Margetts and that he never received his private meeting prior to his dismissal, because Snare was present at the November 10, 2015, meeting. See brief for appellant at 22. NSCS claims that McEwen's definition of the term "privately" is too narrow and that rather than limiting the number of attendants at the meeting, the term requires a "'non-public'" or "'off-the-record'" meeting. See brief for

- 901 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
McEWEN v. NEBRASKA STATE COLLEGE SYS.
Cite as 27 Neb. App. 896

appellee at 13. Thus, the issue before us is the meaning of the term "privately" as used in section 17.3.

[3-6] In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id*. When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Id*. The fact that the parties have suggested opposing meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Id*.

Although the parties have suggested conflicting interpretations in the present case, neither party suggests that the contract is ambiguous, and we find that it is not. As such, we give the term "privately" its plain and ordinary meaning.

The Supreme Court has often turned to dictionaries to ascertain a word's plain and ordinary meaning. See *State v. Gilliam*, 292 Neb. 770, 874 N.W.2d 48 (2016). See, also, *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015); *Rodehorst Bros. v. City of Norfolk Bd. of Adjustment*, 287 Neb. 779, 844 N.W.2d 755 (2014); *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004); *Payless Bldg. Ctr. v. Wilmoth*, 254 Neb. 998, 581 N.W.2d 420 (1998). The American Heritage Dictionary of the English Language 1396 (4th ed. 2000) defines "private" as "[s]ecluded from the sight, presence, or intrusion of others"; "[n]ot available for public use, control, or participation"; "[n]ot for public knowledge or disclosure; secret"; and "[n]ot appropriate for use or display in public; intimate." Similarly, Black's Law Dictionary 1448 (11th ed. 2019) defines "private" as "[o]f, relating to, or involving an individual, as opposed to the public or the government" and "[c]onfidential; secret."

- 902 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
McEWEN v. NEBRASKA STATE COLLEGE SYS.
Cite as 27 Neb. App. 896

When considering these definitions, we conclude that the term "privately" as used in section 17.3 is defined more broadly as NSCS suggests. Rather than allowing only two participants, the term means that the meeting is not public. This interpretation of the term is supported when considering the remainder of the CBA.

[7,8] A contract must receive a reasonable construction, and a court must construe it as a whole and, if possible, give effect to every part of the contract. *Labenz v. Labenz*, 291 Neb. 455, 866 N.W.2d 88 (2015). Whatever the construction of a particular clause of a contract, standing alone, may be, it must be read in connection with other clauses. *Id*.

When reading section 17.3 with the sections that follow, we understand that by requiring the dean to meet "privately" with the faculty member, it allows the attendants of the meeting to discuss a personnel matter in confidence and attempt an amicable resolution. If they are unable to resolve the matter, the faculty member is given written notice of the recommendation for dismissal. According to the CBA, the faculty member may then request a hearing before an advisory committee, where evidence is presented and witnesses testify, and the hearing may be transcribed by a court reporter upon request by any party. Thus, when considering additional sections of the CBA, rather than requiring a one-on-one meeting between the dean and the faculty member, we interpret the private nature of the section 17.3 meeting to stand in contrast to the more public nature of the hearing before the advisory committee, giving the faculty member the chance to resolve the matter behind closed doors first before it is addressed to a committee and in front of witnesses.

When considering this definition, we conclude that the November 10, 2015, meeting satisfied the requirements of section 17.3. The meeting was held in Margetts' office, and there was no verbatim record kept of the meeting. Snare attended as a witness but did not say anything during the meeting. Margetts informed McEwen that he was recommending

- 903 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
McEWEN v. NEBRASKA STATE COLLEGE SYS.
Cite as 27 Neb. App. 896

dismissal and offered him the opportunity to resign rather than be subject to dismissal. Upon the advice of his union representative, McEwen declined to comment. The meeting lasted approximately 5 minutes, and at the conclusion, Margetts gave McEwen a copy of the letter recommending his dismissal. Thus, the meeting was held in private and off the record, and it was attended by just three people, only two of whom participated. In addition, the meeting allowed McEwen the opportunity to reconcile the matter by mutual consent should he have chosen to do so. Accordingly, the district court properly concluded that NSCS complied with the requirements of section 17.3, and thus, the court did not err in overruling the petition in error on that basis.

[9] McEwen raises two additional arguments on appeal. He first asserts that section 17.3 is a substantive rule, as opposed to a procedural rule, and argues that because NSCS failed to follow the requirements of this section, its actions are arbitrary and capricious and subject to reversal. In addition, and in the alternative to the preceding argument, he claims that section 17.3 imposed a contractual duty that NSCS was required to follow before it could exercise termination rights under the CBA. Both of these arguments, however, are premised on a finding that a section 17.3 private meeting was never held. Because we have concluded that McEwen was afforded his rights under section 17.3, we need not address his additional arguments. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Greenwood v. J.J. Hooligan's*, 297 Neb. 435, 899 N.W.2d 905 (2017).

## CONCLUSION

We conclude that the requirements of section 17.3 of the CBA were satisfied in this case and that therefore, the district court did not err in overruling McEwen's petition in error. We therefore affirm.

AFFIRMED.